### IN THE

# SURROGATES'. COURTS

### OF THE

## STATE OF NEW YORK.

---

New York County.—HON. D. C. CALVIN, Surrogate.—
February, 1877.

## Irving National Bank *v.* Kernan.

*In the matter of the Estate of* James B. Taylor, *deceased.* ·

Where in an action in the Supreme Court a receiver had been appointed of the estate of a decedent, and such receiver had made a motion in the Surrogate's Court to set aside certain orders made by it granting allowances to counsel out of the estate, which motion had been denied, and afterwards a creditor of the estate made a motion for the·same purpose,—*Held,* that the receiver being the representative of the creditors as well as of the decedent's estate, the decision on the former motion by the receiver was as binding on the creditors of the estate as it was on the receiver, and that the creditors' motion must be treated as a renewal of the motion by the receiver; and the moving papers not showing a case on which the receiver could renew the motion, the creditors' application could not be entertained.

When a special motion has been made and denied, it can not be renewed without leave of the court first obtained.

Four motions were made by the Irving National Bank to set aside orders, made by the former Surrogate Hutchings, in this matter, granting allowances, in lieu of costs, to Francis Kernan, Roscoe Conkling, Adams and Swan, and A. M. Beardsley, on the grounds among others, that said Surrogate had no power to

make such orders; that they were made without notice to the executor or creditors or receiver; that counsel did not represent the prevailing parties; that said orders were made by mistake and inadvertence as to the solvency of the estate; and that in some of the cases the amounts allowed were in excess of five per cent. on the amounts involved.

The petitions show that in the proceedings in the Supreme Court, Henry W. Bentley was duly appointed receiver of the estate, and that under an order, and the advice of a Judge of the Supreme Court, at Special Term, said receiver made application to this court to vacate the said several orders; that said motions were denied, and he has not appealed, though requested to do so; and that the time for appeal has expired.

In answer, the affidavit of the receiver that he presented a petition to this Court for the purpose of setting aside said orders which were made substantially on the same grounds as the present motions; that said motions were denied; that he notified several of the counsel for creditors, including Gratz Nathan, counsel for the petitioner; that several creditors appeared by counsel before the Surrogate on said motions, and were heard, among others said Nathan, and that said motions were denied on the merits; that he has taken no appeals from said orders nor have any of the creditors requested him to appeal therefrom. As rejoinder, said Nathan filed his affidavit stating that the Irving National Bank was not a party to the motions made by the receiver; that he attended upon said motions; that he discovered on reading the petitions therefor, that certain facts deemed material

were not stated therein, among others the insolvency of the estate, and asked leave to file an affidavit upon that subject, which on objection was denied; that he requested said receiver to appeal from said order, who stated he would take the instructions of the Supreme Court in respect to the priority of such appeal; and that the petition in this proceeding sets forth numerous facts material, which were not before the Court on the former motions.

These affidavits were received as made in all the motions pending. It was urged as a preliminary defence to these motions, that the petitioners had no standing for the purpose of making them, in that the receiver in making his motion represented the creditors of the estate, as well as the estate, and that the decisions of these motions on his petition are *res adjudicata*, until reviewed by appeal; that even the receiver could not renew his motion on additional facts without leave of the Court, but must be put to his appeal, that if any of the creditors for whom he acted felt aggrieved by the result of these motions, they must take their review through the receiver, and not otherwise; and that these motions were an unlawful device to review the former orders, and if these can be made, then any other creditor, years hence, may seek to open said orders, and disturb the orderly administration of the estate.

GRATZ NATHAN, *for the petitioner.*

N. E. KERNAN, *and* C. D. ADAMS, *for creditors.*

THE SURROGATE.— As these objections strike at the very foundation of the motions under consideration, I

deem it my duty first to determine them before considering the merits of the motions, especially as on the former motions I entered into the merits upon substantially the same facts, to the decision of which, reference may be made to ascertain my views upon the merits.   It is urged by counsel for the petitioners that the objections above stated are not *preliminary* in the proper sense of the word, and that a preliminary objection, is one based upon the moving papers and not upon the opposing affidavits.   It seems to me that a sufficient answer to this objection is that the essential preliminary objection which is raised, is stated in the petitions in this matter; for they all set forth the same facts as in the prior motions by the receiver for the identical relief sought in these motions, and also the adverse decision.   I understand the practice to be quite uniform, where the preliminary objection seems to be insurmountable, to dismiss the proceedings without a consideration of the merits; but where there are serious doubts as to the validity of the preliminary objections, then it is deemed best to pass upon the whole question so as to avoid the necessity of an appeal from an order, based upon the preliminary objections merely; and such examination, and reflection as I have been able to give to these motions have convinced me that the decision of the preliminary objection must be fatal to the petition.

I do not concur with the counsel opposed to the motions, that the inconvenience which would result from the numerous applications that might be made by creditors to set aside these orders, forms any conclusive argument against this application, for if one creditor

is entitled to renew the motion by way of experiment, it is the right of *every* creditor to do the same. The practice seems to be well settled, and for very good reasons, that a motion once denied cannot be renewed, unless leave be first obtained from the court. Dollfus *v.* Frosch, 5 *Hill*, 493.) In Willet *v.* Fayerweather (1 *Barb.*, 72), it is held that new matter which will alone justify the renewal of a motion without leave, must be something which has happened, or for the first time come to the knowledge of the party moving, since the decision of the former motion.

In Hall *v.* Emmons (39 *How. Pr.*, 187), it is held that a special motion cannot be renewed upon the same, or substantially the same, facts without leave of the court for that purpose obtained, which leave will not be granted, on facts known to the party at the former hearing to the same effect. See also Matter of Livingston, (34 *N. Y.*, 555.) These authorities establish the proposition that these motions could not have been made by the receiver because of the former motions made by him, and denied.

The next question to be determined is, were the former motions made by the receiver, in effect made by the petitioning creditor and others, through their representative, the receiver?

If the former motion had been made by the executors, would it not have been conclusive as to creditors?

Suppose a will direct the payment of a legacy before the year expire, and an executor, or administrator exact a bond required by 2 *Rev. Stat.*, 90, § 44, would creditors be at liberty either to resist the giving of the bond, or to move thereafter to open the proceedings?

Suppose a compulsory accounting be required by the Surrogate pursuant to the petition of a creditor under section 52, (2 *Rev. Stat.*, 92), would a creditor be heard to object to the order of the court for payment of the debt?

Suppose an executor be called to account on the application of his successor under sections 68 and 69, of 2 *Rev. Stat.*, 93, or a legatee or distributee apply for an advance for support under section 83 of the statute, or a motion be made by a judgment creditor for execution under section 19, where a citation is required to be directed to the executor, or administrator, to show cause, &c., or an allowance upon the probate of a will be made, or costs be allowed for any proceeding in the way of administration, can it be contended for a moment that all such orders which are permitted to be made, without citing the creditors, may be disturbed on the application of creditors at any future time? It is clear that the executors, and administrators in such cases are representatives of the estate, and of the parties interested therein.

Suppose a receiver should bring an action to recover a debt due to the estate, and should be unsuccessful at circuit, and should take an appeal, could a creditor come in, and bring a new suit for the same cause of action? Most obviously not; still the creditor in such a case, and in the proceedings in this court is not without remedy, but whatever remedy is obtained must be through the receiver, and the receiver's conduct may be controlled by the court, on the proper application of the creditor interested in the result.

In Porter *v.* Williams (9 *N. Y.*, 142), it is held that

executors under section 17, 2 *Rev. Stat.*, 449, are not the mere representatives of their testator, but are constituted trustees of the property in their hands, as a fund for the benefit of creditors. See also Brownell v. Curtis, (10 *Paige*, 210, 218). If such be the representative character of executors and administrators, it is quite clear as to the representative character of a receiver. A receiver appointed by the court is appointed on behalf of all parties, and not of the party who procures his appointment. Davis v. Duke of Marlborough, (2 *Swanston*, 125). In Green v. Bostwick (1 *Sandf. Ch.*, 186), it is held that a receiver holds money for whoever can make out a title to it, and whenever such party is ascertained, a receiver is a receiver for that party. (See also *Edwards on Receivers*, 3, 4). In Porter v. Williams (above), it is held that a receiver appointed under the code, represents the interest of the creditors, as well as the debt of the debtor. In Mann v. Pentz (2 *Sandf. Ch.*, 271), it is held that the receiver of an insolvent corporation acts for all the creditors and stockholders.

Willard ( *Willard's Eq.*, 332) says, " the appointment of a receiver is not for any particular party, but for all who are, or may become interested in the fund."

In Iddings v. Bruen (4 *Sandf. Ch.*, 417), it is held that the receiver represents the interests of all parties in the property. It is his duty to protect the property intrusted to him to the best of his ability for all those interests, without being controlled by the representative of any one of them.

The force of these authorities establishes the doctrine that the receiver in this case for all purposes of

protecting the rights of creditors, is their representative, and that whatever he does, they do through him, and that his motions to open, vacate, or modify the orders made by the former Surrogate were made in his representative capacity for them, and that any remedy which he has sought, was sought, as their representative, and that the decision in the receiver's motions is binding upon them until reversed, and that if the receiver could not have renewed these motions, but must be put to his appeal, the creditors are restricted to the same remedy.

For the reasons above stated I am of the opinion that these motions cannot be maintained, because of the preliminary objection urged by the parties in whose favor the original orders were granted.

Order accordingly.